IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0772-WJM-MEH

HAKI MUHAMMAD,

    Plaintiff,

v.

CORE CIVIC INC.,
BICKLE, C.O., and
MEDINA, Captain

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Haki Muhammad ("Plaintiff") brings claims against Defendants Correction Officer Brandon Bickle ("C.O. Bickle"), Captain Jeremy Medina ("Captain Medina"), and Core Civic Inc. ("Core Civic") (together, "Defendants") alleging that Defendants violated his constitutional right under the Eighth Amendment to be free from cruel and unusual punishment during his incarceration, as well as state law claims for assault and battery. (ECF No. 1 ¶¶ 20–32.)

This matter is before the Court on Defendants' Motion for Summary Judgment (the "Motion"). (ECF No. 29.) For the reasons discussed below, the Court grants the Motion.

## I. BACKGROUND

The followings facts are undisputed and mostly drawn from Defendants' Statement of Material Facts. (ECF No. 29 at 2–7, ¶¶ 1–34.) All ECF page citations are

to the page number in the CM/ECF header, which does not always match the document's internal pagination.

Plaintiff is incarcerated at Crowley County Correctional Facility ("CCCF"), which is operated by Core Civic. (ECF No. 29 at 1.) At the time of the relevant events, C.O. Bickle and Captain Medina were employed at CCCF.

At the time of the incident giving rise to Plaintiff's claims, he was housed with James Harrell in Unit 1-A pod, Cell 3113, a two-man cell with a bunk bed. (*Id.* at 2–3, ¶¶ 3–4.) Plaintiff was assigned to the top bunk. (*Id.* at 3, ¶ 5.) On July 7, 2017, at 2:30 a.m., Harrell was informed he needed to go to the medical department for lab work. (*Id.* at 6.) Harrell refused, and at approximately 3:15 a.m., C.O. Bickle was called to Unit 1. (*Id.* at ¶ 7.) C.O. Bickel told Harrell that even if he did not want the lab work performed, Harrell nonetheless needed to go to the medical department to sign a refusal form. (*Id.* at ¶ 8.) Harrell threatened C.O. Bickle, who then secured the cell door, called for a response team, and left Unit 1. (*Id.* at ¶¶ 9–10.)

Captain Jose Arebalo, Lieutenant Michelle Blue, Lieutenant Joe Ortiz, Correctional Officer Elissa Collins, and Correctional Officer Tony Martinez responded to C.O. Bickle's call for a response team. (*Id.* at ¶ 11.) Harrell continued to refuse to go to the medical department to sign the necessary form, and was "cussing and irritated." (*Id.* at 4, ¶ 12.) Captain Arebalo deployed Oleoresin Capsicum spray ("OC spray") under the cell door at 3:30:33 a.m. (*Id.* at ¶ 13.) C.O. Bickle returned to the cell around 3:40:14 a.m. (*Id.* at ¶ 15.) Notably, neither C.O. Bickle nor Captain Medina were present when Captain Arebalo deployed the OC spray. (*Id.* at ¶¶ 14, 16.) "The [Motion]

presents videos which demonstrate that the Defendants did not spray OC Spray into the cell when Plaintiff was in the cell." (ECF No. 32 at 1, ¶ 1.)

Captain Medina, Commander of the Special Operations Response Team, was at home at 3:30 a.m. when CCCF called him to assist with Harrell. (ECF No. 29 at 4, ¶ 17.) Captain Medina arrived at CCCF around 5:26 a.m. and assessed the situation. (*Id.* at 5, ¶¶ 18–19.) He decided to take Plaintiff out of the cell "since [Captain] Medina viewed [Plaintiff] as an innocent bystander," and removed Plaintiff from the cell at 6:05 a.m. (*Id.* at ¶¶ 19–20.) Plaintiff states that Captain Medina's actions were "model conduct and evidence of good training." (ECF No. 32 at 1.) After Plaintiff was removed, Captain Medina again opened the cell door at 6:12:14 a.m. and deployed OC spray directly in Harrell's face. (ECF No. 29 at 4, ¶ 22.) Shortly thereafter, Harrell was removed from the cell by Captain Medina and members of the response team. (*Id.* at ¶ 24.) Plaintiff and C.O. Bickle were not present when Captain Medina used the OC spray on Harrell. (*Id.* at ¶ 23.)

At some point during the night, although it is unclear exactly when, CCCF turned off the water and ventilation to the cell shared by Plaintiff and Harrell. (*Id.* at 6, ¶¶ 28–29.)

As a result of being present while OC spray was deployed in his cell, and perhaps due to a lack of ventilation after the OC spray was deployed, Plaintiff "experienced some coughing and burning . . . but those issues resolved within one hour after he was extracted from the cell." (*Id.* at ¶ 26.)

After the incident, Plaintiff wrote and signed an "Incident Statement," completed

3

an "Informal Resolution Form," filed Step 1 and Step 2 Grievances, wrote to the CCCF warden about the incident, and then completed a Step 3 Grievance. (*Id.* at 6–7, ¶¶ 28–33.) None the these documents identified C.O. Bickle or Captain Medina as the individuals who deployed OC spray or turned off the water and ventilation. (*Id.*)

In his Response to the Motion, Plaintiff admits that Captain Medina was not involved in spraying pepper spray into Plaintiff's cell while Plaintiff was present, but rather removed Plaintiff from the cell when he arrived, exhibiting "model conduct and evidence of good training." (ECF No. 32 at 1.) The Response does not address the actions of C.O. Bickle or the liability of Core Civic. (*See generally id.*) Rather, Plaintiff simply states that Captain Arebalo was the unreasonable actor, and asks to amend his complaint to name Captain Arebalo as a defendant. (*Id.* at 2.)

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to the factfinder or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if

4

the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III. ANALYSIS

### A. Plaintiff's Response to the Motion

As a preliminary matter, the Court addresses Plaintiff's attempt—in his Response to the Motion—to request leave to amend his Complaint to add Captain Arebalo as a defendant. This District's Local Rules plainly state that "[a] motion shall not be included in a response or reply to the original motion" and require that each motion "be filed as a separate document." D.C.COLO.LCivR 7.1(d). The Court could strike Plaintiff's request outright for failure to comply with the Local Rules.

In the interest of justice, the Court will consider whether it would, on the basis of the information included in Plaintiff's Response, grant a motion for leave to file an amended complaint. The Court first notes that the scheduling order set a July 25, 2018 deadline for joinder of parties and amendment of pleadings, and a December 11, 2018 discovery deadline. (ECF No. 23 at 5–6.)

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). If a plaintiff fails to satisfy either factor—(1) good cause or (2) Rule 15(a)—then the plaintiff is not entitled to have the scheduling order modified. *Id*. at 1241. Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). Instead, Rule 16(b) "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Id*.

In practice, this standard requires the plaintiff "to show the scheduling deadlines cannot be met despite [the plaintiff's] diligent efforts." *Gorsuch*, 711 F.3d at 1240 (internal quotation marks omitted). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Id*. "If the plaintiff knew of the underlying conduct but simply failed to raise [the] claims, however, the claims are barred." *Id*.

Application of Rule 16 is straightforward in this case: Plaintiff has provided no explanation of why he belatedly seeks to add Captain Arebalo as a defendant in this case. Defendants identified Captain Arebalo as a person involved in the incident in

their Initial Disclosures, which were provided to Plaintiff on June 25, 2018. (ECF No. 33 at 2.) Given the complete lack of argument from Plaintiff on this point, the Court finds that, even if Plaintiff had complied with the Local Rule 7.1(d), he has failed to show good cause to amend the scheduling order. The Court therefore strikes Plaintiff's request for leave to amend his complaint.

**B.     Defendants' Motion**

Plaintiff did not object to Defendants' Motion on substantive grounds, and thus the Motion is effectively confessed. Moreover, Plaintiff admits that Captain Medina's actions were "model conduct and evidence of good training." (ECF No. 32 at 1.) Nevertheless, this Court may not grant an unopposed motion for summary judgment unless the moving party has first met its burden of production and demonstrates it is legally entitled to judgment under Rule 56. *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002). Accordingly, the Court will proceed to evaluate whether Defendants have met the Rule 56 standard for summary judgment in their favor.

      1.     *C.O. Bickle and Captain Medina*

          a.     <u>Constitutional Claims</u>

Plaintiff brings a constitutional claim against C.O. Bickle and Captain Medina, alleging that their conduct subjected Plaintiff to "severe physical pain and suffering" and constitutes "cruel and unusual punishment of Plaintiff in violation of the Eight[h] Amendment . . . and gives rise to a cause of action under 42 U.S.C. § 1983." (ECF No. 1 ¶¶ 24, 26.)

"[T]he Eighth Amendment's prohibition against 'cruel and unusual punishments' applies to the treatment of inmates by prison officials." *Brosh v. Duke*, 616 F. App'x 883, 888 (10th Cir. 2015). Prison officials violate an inmate's Eighth Amendment rights when they subject him or her to "unnecessary and wanton infliction of pain." *Id.* The "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* There are no disputed facts regarding the conduct of the officers, and there are no facts to show that C.O. Bickle and Captain Medina used any force against Plaintiff, much less any force that was an unnecessary and wanton infliction of pain. *Brosh*, 616 F. App'x at 888.

In addition, certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To state a conditions of confinement claim, an inmate must point to evidence plausibly establishing both the objective and subjective components of that claim. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). The objective component requires conditions sufficiently serious so as to "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective component requires that a prison official have a culpable state of mind and act with deliberate indifference to inmate health or safety. *Wilson v. Seiter*, 501 U.S. 294, 297, 302–03 (1991).

Even if the Court could find that the undisputed facts showed conditions which deprived Plaintiff of a "minimal civilized measure of life's necessities," *see Rhodes*, 452

8

U.S. at 347, Plaintiff has established that no set of facts that could support a finding that C.O. Bickle or Captain Medina had a culpable state of mind, or acted with deliberate indifference to inmate health or safety. *Wilson*, 501 U.S. at 297, 302–03. On the undisputed facts of this record, Plaintiff fails to state an Eighth Amendment claim for excessive force or unconstitutional conditions of confinement against C.O. Bickle or Captain Medina. Accordingly, C.O. Bickle and Captain Medina are entitled to summary judgment in their favor on Plaintiff's constitutional claim.

        b.      <u>Assault and Battery</u>

Plaintiff also brings state law tort claims for assault and battery against C.O. Bickle and Captain Medina.

Under Colorado law, assault and battery are separate but similar torts, with similar elements. To prove assault, a plaintiff must establish that: "(1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive." *Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1198 (Colo. App. 2008) (citing *Bohrer v. DeHart*, 943 P.2d 1220, 1225 (Colo. App. 1997)). "The elements of battery are similar, except that the contact must have actually resulted." *Id*.

There are also no disputed facts material to these state law tort claims. The undisputed facts do not support any element of a claim for assault or battery. The facts clearly demonstrate that neither C.O. Bickle or Captain Medina acted with any intent to make contact with Plaintiff, placed Plaintiff in apprehensive of an imminent contact,

9

contacted Plaintiff, or engaged in any conduct that was or appeared to be harmful or offensive to Plaintiff. Accordingly, the Court grants this portion Defendants' Motion and finds that C.O. Bickle and Captain Medina are entitled to summary judgment in their favor on Plaintiff's Colorado state law claims.

    2.    *Core Civic*

Plaintiff also seeks to hold C.O. Bickle and Captain Medina's employer, Core Civic, liable with respect to his alleged damages. In his Complaint, Plaintiff alleges that Core Civic is vicariously liable for assault and battery, and directly liable for its failure to adequately train its officers. (ECF No. 1 ¶ 32.) Plaintiff does not, however, mention any policy regarding use of OC spray, or even allege how better training could have prevented his injury.

Defendants are entitled to summary judgment on the claims against Civic Core under either a *respondeat superior* theory of liability or a *Monell* claim.

Core Civic is a business entity, not a natural person. In the Tenth Circuit, a business entity working on the state's behalf can only be liable under § 1983 through the municipal liability framework established by the Supreme Court in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003); *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 945–46 (10th Cir. 2005). Under *Monell*, a municipality—or, in this case, a private entity under contract with the state to fulfill one of the state's functions—"cannot be held liable *solely* because it employs a tortfeasor." 436 U.S. at 693 (emphasis in original). Therefore, to the extent Plaintiff seeks to hold Core Civic vicariously liable for Plaintiff's constitutional

claims under a *respondeat superior* theory for the individual defendants' alleged § 1983 violations, Plaintiff's claims fail. Moreover, while Core Civic could be liable under a *respondeat superior* theory for Plaintiff's state law claims if C.O. Bickle or Captain Medina had in fact violated a state law, as discussed above, C.O. Bickle and Captain Medina are not liable for assault or battery. Thus, Core Civic cannot be vicariously liable for non-existent violations.

A municipality—or a corporate entity like Core Civic—can be liable under 42 U.S.C. § 1983 for damages when the entity's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." 436 U.S. at 694. "A plaintiff alleging a municipal liability claim must therefore identify a government policy or custom that caused the injury and then demonstrate that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (internal quotation marks omitted). The three elements of a municipal liability claim can be summarized as: (1) official policy or custom, (2) causation, and (3) state of mind. If Plaintiff establishes these elements, then Core Civic may liable, even if its employees are not defendants. *See Cordova v. Aragon,* 569 F.3d 1183, 1193–94 (10th Cir. 2009).

A municipal policy or custom may be "(1) an officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise

employees." *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)).

On the Motion before the Court, no facts have been established regarding any policy or custom by Core Civic that would render it liable for the acts of C.O. Bickle, Captain Medina, or even Captain Arebalo. In particular, Plaintiff has adduced no evidence to support his conclusory statement in the Complaint that Core Civic failed to properly train its employees. (ECF No. 1 ¶ 32; *see generally* ECF No. 32.) Plaintiff has failed to meet his burden to show a genuine dispute of material fact that would allow a jury to decide this claim in favor of Plaintiff. Absent any specific allegations, much less facts, supporting the existence of an unlawful policy or custom, Core Civic is entitled to summary judgment in its favor on Plaintiff's claim against it.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 29) is GRANTED;
2. The Clerk shall enter final judgment in favor of Defendants and against Plaintiff, and shall terminate this case; and
3. The parties shall bear their own attorneys' fees and costs.

Dated this 26th day of September, 2019.

BY THE COURT:

William J. Martínez
United States District Judge